UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JAMES R. EDENS,
    Plaintiff,

v.   02-CV-3141

JAMES G. COX,
STEVE MONTGOMERY,
KEVIN MCFADDEN,
DAVE HUFFMAN,
JOHN PROEFROCK
RICK SHEPARD,
KEVIN STANDLEY,
BRIAN WILLIAMS,

    Defendants.

<u>ORDER ON RULE 50 MOTION</u>

    This is a suit for money damages brought under the provisions of 42 U.S.C. §1983. The court has jurisdiction through 28 U.S.C. Sections 1331 and 1343. On January 5, 2005, the court granted a judgment as a matter of law for the defendants after the case was tried before the court sitting with a jury. This is the written order explaining the reasons for the directed verdict.

    At the jury trial, the plaintiff, James R. Edens, appeared pro se. The defendants, with the exception of James G. Cox, appeared personally and through their counsel, Illinois Assistant Attorneys General, Julie Morgan and Kelly Choate. The defendant Cox, called as a witness by the plaintiff, testified by telephone conference from Nevada. The plaintiff's witnesses, Fishel, Kinney, Steele, Britton and Delaney, testified by interactive video conference from the Logan Correctional Facility.

    Before the jury was empaneled, Edens withdrew his Eighth Amendment claim concerning the required co-payments for medical attention and the prison's payment policies for commissary items. That left six constitutional deprivation claims remaining at the beginning of the trial. They were: 1) The confiscation of a letter written by Edens to his nephew and punishment therefore in violation of his First Amendment rights; 2) The institution of disciplinary proceedings against Edens in retaliation for the exercise of his Fifth Amendment right to refuse to answer questions about gang activity; 3) The institution of disciplinary proceedings against Edens for misuse of a copy machine in retaliation for his grievance about the questioning and disciplinary report; 4) The institution of disciplinary proceedings against Edens for charging fees for legal services in retaliation for his prior grievances, his refusal to answer

1

the gang-activity questions, and his help with other inmates' legal claims; 5) The confiscation of a letter written by Edens to his sister-in-law and punishment therefore in violation of his First Amendment rights; and, 6) The repeated and routine interference with Edens' mail in violation of his First Amendment rights. The evidence adduced, taken in the light most favorable to the plaintiff, failed to demonstrate these constitutional deprivations.

1) Confiscation of and Punishment for Letter to Nephew

The letter Edens wrote to his nephew that led to the December 5, 2001 disciplinary report was reasonably construed by the intelligence unit officer, the witness Fishel,[1] as referring to possible gang activity.   The plaintiff is an admitted former, active member of the Black Gangster Disciples. When he wrote in the letter, "Retired from the mob, but don't get it twisted I'll still take it there with no hesitation," Officer Fishel reasonably inferred that it indicated possible gang activity and the plaintiff's willingness to participate.  Edens was found guilty of the offense charged in the disciplinary report (gang activity) and there was sufficient evidence to sustain the finding.  *See McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999)(if procedural protections given, "'the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by 'some facts.'"), *quoting Hanrahan*, 747 F.2d 1137, 1139-40 (1984)).[2]  Edens told the court that he went to segregation for three days and lost his job in the library.  But he got his job back and the letter was returned to him and he mailed it to his nephew.  Perhaps the institutional authorities after consideration decided that the thrust of the letter was, as Edens claimed, an attempt to dissuade the nephew from engaging in gang activity as Edens had done.  That would not negate Fishel's legitimate penological purpose of thwarting gang activity based on his reasonable interpretation of the letter.  *Pell v. Procunier*, 417 U.S. 817, 822 (1974)("In the First Amendment context, . . .a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)(regarding outgoing mail, restriction must be "generally necessary" to achieve a legitimate governmental interest), *overruled in part by Thornburg v. Abbott*, 490 U.S. 401 (1989).  Additionally, the delay in allowing Edens to mail the letter was not unreasonable in light of the plaintiff's history of gang activity.  *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000)(sporadic and short-term mail delays insufficient to state First Amendment cause of action); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)(prisoners have First Amendment right to send mail, subject to ". . . the legitimate penological objectives of the corrections system.").  In the final analysis no First Amendment infringement can reasonably be inferred from the prison's handling of the plaintiff's

---

[1] Fishel wrote the ticket and was the person interrogating the plaintiff about his gang activities, but the plaintiff did not name him as a defendant.

[2] Edens has no procedural due process claim since he lost no good time, but the fact that the guilty finding was supported by some evidence is relevant to counter his claim that the report was written in retaliation.

letter to his nephew, or the discipline he received because of what he wrote in that letter.

    2, 3 and 4) Retaliation for Exercise of Constitutional Rights

    Acts which are constitutional can become unconstitutional if done in retaliation for the exercise of a constitutionally protected right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted). The first step is to identify the constitutional rights Edens exercised.

    Edens has a constitutional right emanating from the First Amendment to file grievances, lawsuits, and to send and receive mail. *See Johnson v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). As for Edens lawyering, he does not have a heightened First Amendment right to provide legal assistance to inmates, but his speech in doing so is subject to the same protections normally accorded prisoner's speech under *Turner*'s reasonable test. *Shaw v. Murphy,* 121 S.Ct. 1475 (2001).

    As to his Fifth Amendment rights, Edens finds something sinister in attempts to interrogate him about his former gang activity in October, 2001. Fishel, Kinney and Standley were doing their job of investigating internal affairs and gathering intelligence about possible threats to institutional discipline and security. They are not precluded from asking the plaintiff questions about gang activity. It is not even clear that the plaintiff was asked self-incriminating questions during this interview.[3] However, for purposes of this order the court assumes the plaintiff was exercising a constitutional right when he refused to answer questions in October, 2001. *See, e.g., McKune v. Lile*, 536 U.S. 24, 36 (2002)("The privilege against self-incrimination does not terminate at the jailhouse door . . .").

    Identifying the constitutional rights exercised is only the start. To succeed, Edens must prove by a preponderance of evidence that retaliation for the exercise of those rights was a motivating factor behind the disciplinary reports. *Spiegla v. Hull*, 371 F.3d 928, 942-43 (7th Cir. 2004); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Edens claims of retaliation are purely the plaintiff's conclusions without supporting evidence. He claims only a chronology of events to support his theory. That is, in October, 2001, Edens was questioned by Fishel about his past gang activity in the presence of Kinney and Standley, questions Edens' refused to answer. On December 5, 2001, Fishel wrote Edens a disciplinary report for a letter to Edens' nephew.[4] On December 7, 2001 Edens filed a grievance against Fishel. On February 5, 2002, Kinney wrote Edens a disciplinary report for misuse of the copying machine.[5] On July 29, 2002, Defendant Standley wrote a disciplinary report against Edens for charging fees for legal services

---

[3]Defendant Fishel testified that the questioning was a routine part of his job regarding all inmates. He also testified that no Miranda warnings were given because the plaintiff was not questioned about possible criminal activity, but only about "past gang involvement."

[4]Fishel is not a defendant.

[5]Kinney is not a defendant.

3

rendered to inmates, in part based on statements in Edens' letter to his sister-in-law.

No reasonable inference arises from this chronology that the defendants were motivated by retaliation. Fishel and Kinney, who wrote the December and February tickets (those closest in time to the October questioning), are not even defendants. The only disciplinary report written by a defendant was the July, 2002 report by Standley–written more than nine months after the October questioning and seven months after the grievance against Fishel.[6] That is not very suspicious timing.

Furthermore, the disciplinary reports were justified by legitimate penological interests, even imagining that retaliation was a motivating factor. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004)(once plaintiff shows improper motive, burden shifts to defendants to show same action would have been taken regardless). As explained above, Fishel's disciplinary report was based on Fishel's reasonable interpretation of the letter to the plaintiff's nephew. Kinney's disciplinary report about Edens' misuse of the copying machine was also supported by a reasonable inference that Edens abused his library job to make personal copies.[7] Even though there is a conflict about whether the copying was authorized or not, the ticket was written for what was legitimately perceived as a violation of institutional regulations.[8] Again, the plaintiff's assertion about retaliation is his own conclusion based solely on his speculation.

Defendant Standley also had legitimate reasons for his disciplinary report accusing Edens of charging for legal work. *See* 20 Ill. Admin. Code § 504, App. A, 309 (inmates may not engage in unauthorized business venture). Standley was the lieutenant in charge of Internal Affairs at Logan. Standley testified that he discovered payments into Edens' trust account from a fictitious source that Standley believed were payment for legal advice that Edens had given.[9] Standley also testified that he overheard a phone conversation between an inmate and someone outside referencing payment to Edens for assistance. Additionally, Standley relied on plaintiff's letter to his sister-in-law stating that he did "civil suits, or criminal appeals, child custody or visitation, divorces. I'm even working on contract law. I try to get an 1/8 of everything."

---

[6]Defendant Standley testified that he worked with Fishel and Kinney but was not their supervisor. Standley worked in a division separate from Fishel and Kinney.

[7]The Complaint alleges this ticket was ultimately dismissed, but the final pretrial order states the plaintiff was found guilty.

[8]Edens wrote a letter to a friend and included a copy of a newspaper article about the Supreme Court's *Apprendi* decision. Department regulations permit use of institution copying machines for legal work, specifically copying material that will be included in legal mailings or research. Copying material for personal use or mailing is prohibited and is a misuse of copying privileges. Edens' letter to his female friend was not legal mail, and he does not appear to assert that its inspection was improper.

[9]Specifically, money from a "Katie Harley," who was determined to be an alias.

Standley interpreted "1/8" to mean some sort of payment or contingency fee.

In response, Edens presented testimony from inmate Steele, who testified he had not been charged for Eden's legal help.[10] Edens also testified that "1/8" simply meant trying to gain a cursory understanding of different areas of law. Whether defendant Standley was ultimately correct in his interpretation is not the issue, however. Standley's conclusions were reasonable and he had a legitimate reason for writing the ticket. In sum, the idea of retaliation is Edens, *ipse dixit*. No reasonable juror could find for Edens on his retaliation claims on the evidence presented.

5) Confiscation of and Punishment for Letter to Sister-in-Law

The same analysis applies for Edens' letter to his sister-in-law as the letter to his nephew. Edens maintained he was wrongly punished for statements in that letter because Standley's interpretation of "1/8" was unreasonable. As already discussed, Standley's interpretation of that phrase was not unreasonable. In any event, Standley's disciplinary report was based on more than just the "1/8" reference. The primary evidence against Edens consisted of the money Edens received from persons Standley believed were fictitious, and from a phone conversation Standley overheard regarding Edens' charges. That is sufficient reason for the ticket, even without the letter. Accordingly, Edens has not proven any First Amendment violation in relation to the prison's handling of this letter or the July, 2002 disciplinary report based in part on the letter.

6) Mail Handling

The defendant Proefrock, the mail room supervisor at Logan, testified that legal mail is mail stamped or marked "Legal Mail," "Confidential," or "Privileged" that is from a court or a lawyer. Proefrock testified that most of the legal mail that is improperly opened is because it is not so marked. Proefrock also testified that legal mail is delivered at legal mail call and opened in the presence of the inmate addressee and examined for contraband. All other mail is opened in the mail room, examined, and later delivered to the inmate addressee.

Edens told the court that there were perhaps a dozen occasions from October, 2001 through April, 2002, on which the mail room inappropriately opened his "legal mail."[11] However, most of these items were from attorneys representing defendants in the plaintiff's civil

---

[10] Standley testified that he did not rely on anything inmate Steele told him.

[11] The Amended Complaint references a period of June, 2001 through April, 2002. Eight photocopies of envelopes, purportedly representing legal mail that was opened outside Edens' presence were attached to the Amended Complaint. In addition to Brinker & Doyen, the other envelopes were from the Public Defender, the Illinois Attorney General, Heyl, Royster, Voelker and Allen, and John J. Hopkins & Associates. Edens told the court that 12 or 13 letters were opened, but that he wrote only eight grievances.

5

suits. For example, the law firms Brinker & Doyen and Heyl Royster Voelker & Allen represented the defendants in plaintiff's § 1983 suit in the Southern District, *Edens v. Larson et al.*, Case. No. 00-CV-00626-WDS. It is hard to see how mail from the defendants' attorneys should be considered "legal mail" under Constitutional standards; there is no attorney-client privilege involved or danger of chilling Edens' access to courts or communications with one of his attorneys. *See Sallier v. Brooks*, 343 F.3d 868, 876 (6th Cir. 2003)("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights."). Taking the letters from these firms out, just five envelopes remain attached to Edens' Amended Complaint: one from the Illinois Attorney General, one from a "John J. Hopkins & Associates," and three from the public defender. Five times over seven months is too isolated and sporadic to win a Constitutional claim.

Additionally, Edens told the court that only two or three of the letters at issue were actually stamped as required. Prison officials act reasonably when they require mail from legal sources, *including* attorneys, to be specially marked to be considered "legal mail." *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987)(upholding federal prison's requirement that mail from attorneys be marked "special mail–open only in presence of inmate," or mail would be treated as general correspondence); *see also Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 306 n.1 (7th Cir. 1993)(distinguishing *Martin* because the letters in *Castillo* were properly marked); *Wolff v. McDonnell*, 94 S.Ct. 2963, 2985 (1974)(" It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.") Following that logic, only three properly marked letters were improperly opened over seven months. Again, that is not enough to permit an inference of constitutional deprivation.

Even assuming that all 12 or 13 items were "legal mail" as Edens claims, he has no evidence, other than his speculation, that the openings were anything but negligent. Such a deviation from proper practice, in the absence of proof of invidious intent, is not a constitutional violation. *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)(negligence is not a constitutional violation). Prison officials admitted in response to Edens' grievance that letters from Brinker & Doyen were mistakenly opened outside Edens' presence. Nor is there any evidence of a systemic failure with respect inmates' legal mail in general that might permit an inference of deliberateness. Edens listed on the final pretrial order affidavits of other inmates who purportedly averred to their own experience of mail interference, but those affidavits are inadmissible hearsay. Edens also told the court of one instance where he believed Marshals forms and exhibits that were required for his case in the Southern District were confiscated, but even if they were there is no evidence that his case suffered.[12]

---

[12]The Amended Complaint alleged confiscation of marshal forms and exhibits for plaintiff's civil case in the Southern District of Illinois (Complaint, para. 84). According to the docket sheet for *Edens v. Larson*, 00-CV-00626 (S.D. Ill), plaintiff's amended complaint was allowed (#36) and the new defendants all appeared (1/28/02 Docket Entry).

In addition, there was no proof that Defendant Proefrock was personal responsible for the improper openings. *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001)(personal responsibility required for Sectiona1983). Proefrock told the court he did not personally open the letters or tell others to do so. There is no evidence it was done with Proefrock's knowledge or consent (except for the grievance, which shows at most that Proefrock initially believed mail from out of state attorneys was not privileged). Edens' belief otherwise is based on pure speculation. Proefrock cannot be held liable for his subordinate's mistakes simply because he was the mailroom supervisor. It is well established that *respondeat superior* is not a basis for liability in a §1983 case, *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001), and no other mail room employees were named as defendants.

In summary, the motion of the defendants for judgment as a matter of law on each of the plaintiff's claims is allowed. "[T]here is no legally sufficient evidentiary basis for a reasonable jury to find for" the plaintiff on any of his claims. Fed.R.Civ.P. 50. In the situations where there was a disagreement about the implication to be drawn from the evidence, no reasonable jury could have found liability on the part of a defendant. On the occasions where there was no disagreement about what had taken place, constitutional violations were not established.

The Clerk has accordingly entered judgment in favor of each of the defendants and against the plaintiff, parties to bear their own costs (d/e 55).

Enter this __21st__ day of January, 2005.

s\Harold A. Baker

Harold A. Baker
United States District Judge